O

# United States District Court
# Central District of California

| | | |
|---|---|---|
| YI ZHENG, | | Case № 5:26-cv-00519-ODW (MAAx) |
| | Petitioner, | **ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [3]** |
| v. | | |
| MARIN et al., | | |
| | Respondents. | |

## I. INTRODUCTION

Petitioner Yi Zheng brings a petition for a writ of habeas corpus against Respondents Ernesto Santacruz, Jr., Acting Field Office Director, Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, Acting Director of ICE; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and David Marin, Warden of Adelanto ICE Processing Center.  (Pet. ¶¶ 10–14, Dkt. No. 1.)  Zheng also moves *ex parte* for a temporary restraining order requiring his immediate release from custody.  (Ex Parte Appl. ("TRO") 2, Dkt. No. 3.)  Respondents fail to timely oppose the request.  For the reasons discussed below, the Court **GRANTS** the TRO.

## II. BACKGROUND

Zheng is a Chinese national who has been living in the United States since 2011.  (Pet. ¶ 18.)  Zheng is married and has two children, ages eleven and five, both

of whom are United States citizens. (*Id.* ¶ 1.) He has no criminal record and maintains strong community ties. (*Id.* ¶ 7.)

In 2011, Zheng arrived in the United States with his wife and applied for asylum. (*Id.* ¶ 18.) In January 2012, DHS initiated removal proceedings against the couple. (*Id.* ¶ 19.) In February 2018, an immigration judge denied Zheng's wife's application for asylum. (*Id.*) In July 2019, the Board of Immigration Appeals denied their appeal. (*Id.*) In October 2019, ICE placed Zheng on an Order of Supervision ("OSUP"), with orders to regularly report to ICE. (*Id.* ¶ 20.)

For over half-a-decade, Zheng dutifully complied with the conditions of the OSUP. (*Id.* ¶ 7.) On February 2, 2026, accompanied by his attorney, Veronica Barba, and his minor son, Zheng appeared at an ICE check-in. (Decl. Veronica Barba ISO Pet. ("Barba Decl.") ¶¶ 2–3, Dkt. No. 1-1.) At approximately 10:05 a.m., an ICE officer called for Zheng but asked Barba and Zheng's minor son to stay in the waiting area. (*Id.* ¶¶ 4–7.) When Barba asked why she could not accompany her client, the ICE officer stated that ICE was arresting Zheng. (*Id.* ¶ 6.) The ICE officer further stated that ICE was arresting Zheng due to his outstanding removal order. (*Id.* ¶ 8.) Barba stated that Zheng had been compliant with his OSUP. (*Id.*) The arresting ICE officer responded, "[t]here was a change in administration." (*Id.* ¶ 9.)

At around 11:30 a.m., Zheng's wife arrived to pick up Zheng's minor son. (*Id.* ¶¶ 11, 13.) An ICE officer then escorted Barba and Zheng's wife to an interview room where Zheng was detained. (*Id.* ¶ 13.) Zheng informed Barba that he was asked to sign a document agreeing to a ten-year removal bar, which he refused to sign. (*Id.* ¶ 16.) However, Zheng did sign other documents, which Barba requested copies of. (*Id.* ¶¶ 16–17.) An ICE officer told Barba that she could obtain copies from "Room B18" between the hours of 1:00 p.m. and 4:00 p.m. (*Id.* ¶ 17.)

At 2:00 p.m., Barba visited Room B18. (*Id.* ¶ 20.) Barba spoke further with Zheng, who told her that he had not been given any copies of the documents he signed. (*Id.*) Zheng also told Barba that an ICE officer told him that he was being

held "for what happened in 2019," which Barba understood to mean Zheng's original removal order. (*Id.* ¶ 21.)

Based on these allegations, on February 5, 2026, Zheng filed a Petition for Writ of Habeas Corpus on the grounds that his detention violates his due process rights. (*Id.* ¶¶ 40–56.) That same day, Zheng filed this Application for a Temporary Restraining Order. (TRO.) Zheng requests that the Court order Respondents to immediately release Zheng from custody and to enjoin Respondents from re-detaining him unless they follow their own regulations. (*Id.* at 9.) Zheng's counsel, Joshua A. Altman, concurrently served this Application on Respondents. (Decl. Joshua A. Altman ISO TRO ("Altman Decl.") ¶¶ 2–3, Dkt. No. 3-2.) Respondents fail to timely respond.[1]

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain relief, a plaintiff must meet the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

---

[1] The Court's Rules state that it "will not rule on any application [for a temporary restraining order] for at least 24 hours after the party subject to the requested order has been served." Judge's Procedures § VII.D, https://apps.cacd.uscourts.gov/Jps/honorable-otis-d-wright-ii. During those 24 hours, the party subject to the requested order "may file opposing or responding papers." *Id.* Thus, Respondents had until February 6, 2026, at 2:42 p.m., to respond. They failed to do so.

## IV. DISCUSSION

The Court has jurisdiction to decide whether Zheng's detention is lawful and whether injunctive relief is appropriate here. *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (holding that a "district court may consider a purely legal question that does not challenge" the execution of a removal order).

### A. Likelihood of Success on the Merits

The first *Winter* factor "is the most important," and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Zheng argues, in part, that he is likely to prevail on the merits because his re-detention infringes his Fifth Amendment right to due process and violates the *Accardi* doctrine. (TRO 5–6.) Specifically, he contends that ICE may not revoke an OSUP simply because there has been a "change in administration," especially without a "bond hearing, written notice, or any opportunity to contest the basis for his custody." (*Id.*)

"It is well established that government agencies are required to follow their own regulations." *Delkash v. Noem*, No. 5:25-cv-01675-HDV (AGRx), 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Courts in this District and around this Circuit have "unequivocally found that the government's failure to follow its release procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful." *Id.*; *see, e.g.*, *Palacios v. Marin*, No. 5:26-cv-00132-AB (SPx), 2026 WL 166903, at *2 (C.D. Cal. Jan. 16, 2026) (granting TRO based on the government's failure to provide requisite notice and interview under 8 C.F.R. § 241.13); *Mahalati-Shirazi v. Noem*, No. 5:26-cv-00117-MWC (SSCx), 2026 WL 175654, at *5 (C.D. Cal. Jan. 18, 2026) (same).

"Revocation of an [OSUP] is governed by 8 C.F.R. § 241.13(i)." *Morales Sanchez v. Bondi*, No. 5:25-cv-02530-AB (DTBx), --- F. Supp. 3d ---, 2025 WL 3651899, at *4 (C.D. Cal. Dec. 5, 2025). Absent violation of an OSUP, "ICE may

4

revoke release if it determines, based on changed circumstances, that there is 'a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future.'" *Id.* (alteration in original) (citing 8 C.F.R. § 241.13(i)(2)). Upon revocation of release, a noncitizen must be "notified of the reasons for revocation of his or her release" and be given "an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). During that interview, the noncitizen may show "there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

The Court finds that Respondents' conduct violates their own regulations in two ways. First, at the time of detention, Zheng was not given adequate notice of the reasons for his OSUP revocation. The notice must contain "factual allegations specific to [the] [p]etitioner," here Zheng, setting out how circumstances have changed such as to warrant revocation. *Hashemi v. Noem*, No. 2:25-cv-10335-HDV (SRx), --- F. Supp. 3d ---, 2025 WL 3468694, at *5 (C.D. Cal. Nov. 19, 2025). A petitioner must also be given sufficient information for the petitioner to "meaningfully respond to the reasons and submit evidence in opposition." *Id.* (citing *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025)).

ICE did not provide Zheng adequate notice. It certainly did not provide him with written notice, as ICE did not give Zheng copies of any documents, including those he signed. (Barba Decl. ¶ 19.) Instead, the only "notice" that the Court can infer from the record is when an ICE officer told Barba that Zheng was being detained because "[t]here was a change in administration." (*Id.* ¶ 9.) As an initial matter, the Court harbors serious doubts whether a "change in administration," presumably referring to the change of power in the Executive Branch, constitutes a valid "changed circumstance" making it "significant[ly] like[ly] that [Zheng] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). More importantly, however,

a "change in administration" contains neither "factual allegations specific to" Zheng nor sufficient information for him to "meaningfully respond." *Id.*; *see Hashemi*, 2025 WL 3468694, at *5 ("Th[e] Court is not requiring that a notice of revocation include any particular magic words; but it must provide real, specific, concrete information that a noncitizen could actually respond to."). Thus, Zheng did not receive sufficient notice under Respondents' own regulations.

Second, Zheng has not been afforded a meaningful, and "prompt[]," initial informal interview. 8 C.F.R. § 241.13(i)(3). Specifically, the record indicates that ICE has not given Zheng, or his counsel, an opportunity to show "there is no significant likelihood he [will] be removed in the reasonably foreseeable future, or that he . . . has not violated the [OSUP]." *Id.*; (*see generally* Pet.; TRO; Barda Decl.) Rather, the record indicates that ICE officers stonewalled Zheng's counsel, dismissing her arguments regarding Zheng's compliance with the OSUP. (*See, e.g.*, Barda Decl. ¶ 8.) In any event, any interview would be deficient; "because [Zheng] was not given the reasons for revocation, he could not have meaningfully responded to them at [any] alleged informal interview." *Hashemi*, 2025 WL 3468694, at *5.

To summarize, the Court finds that Respondents failed to give Zheng meaningful notice of his OSUP revocation and an informal interview, in violation of their own regulations. This failure renders Zheng's re-detention unlawful. *See Delkash*, 2025 WL 2683988, at *6 ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."). Thus, the Court finds that Zheng is likely to succeed on the merits of his due process claim.

**B.      Likelihood of Irreparable Harm**

As to the second *Winter* factor, Zheng contends that he will suffer irreparable harm in the absence of a TRO because he will continue to be unlawfully detained and separated from his wife and children. (TRO 6–7.)

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[I]n cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm." *Baird*, 81 F.4th at 1048. Moreover, "unlawful detention certainly constitutes extreme or very serious injury which is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (citation modified). The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," including "economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id.* at 995.

As established above, ICE is currently unlawfully detaining Zheng. Every minute Zheng spends in unlawful detention is another minute of irreparable harm to him, his wife, and his minor children. The Court finds that Zheng has established a strong likelihood of irreparable harm.

C. **Balance of Equities and Public Interest**

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]t is clear that it would not be equitable or in the public's interest" to allow the government "to violate the requirements of federal law." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Moreover, "the public has a strong interest in upholding procedural protections against unlawful detention," and "in the efficient allocation" of resources. *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

The balance of hardships tips strongly in Zheng's favor as he would suffer great hardship if the Court were to deny his TRO. *See Winter*, 555 U.S. at 26 (requiring the balance of hardships to "tip strongly" in the moving party's favor). Specifically, Zheng would continue to be detained for an indefinite amount of time without due

process. In contrast, Respondents "cannot reasonably assert" they are "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Furthermore, should Zheng remain detained without sufficient due process, "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the balance of equities and the public interest factors also favor injunctive relief.

Having found that all *Winter* factors weigh in favor of injunctive relief, the Court **GRANTS** Petitioner's TRO.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's TRO. (Dkt. No. 2.) It is hereby **ORDERED** that:

- Respondents shall **IMMEDIATELY RELEASE** Zheng under the conditions of his previous Order of Supervision;
- Respondents are **ENJOINED** from re-detaining Zheng absent compliance with Respondents' own regulations, including, but not limited to, 8 C.F.R. § 212.13; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **February 13, 2026**, as to why the Court should not issue a preliminary injunction in this case. Zheng may file a reply by **February 16, 2026.** The Court **SETS** a hearing on the preliminary injunction for **February 20, 2026, at 9:00 a.m.**, via Zoom.

**IT IS SO ORDERED.**

February 6, 2026

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE